IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MISTY BLU STEWART, on behalf of herself and all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) CUS NASHVILLE, LLC, COYOTE UGLY ) SALOON DEVELOPMENT CORP., ) COYOTE UGLY ENTERTAINMENT, INC., ) and LILIANA LOVELL, ) ) Defendants. ) | Case No. 3:11-cv-0342 Judge Trauger |

### MEMORANDUM AND ORDER

Pending before the court is a Motion to Dismiss filed by defendants CUS Nashville, LLC d/b/a Coyote Ugly Saloon, Coyote Ugly Saloon Development Corp., and Coyote Ugly Entertainment, Inc. (Docket No. 12), to which the plaintiff, Misty Blu Stewart, has responded (Docket No. 17). For the reasons discussed herein, this motion will be denied.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

While the precise dates of employment are unclear, at some time in the three years prior to April 7, 2011, the plaintiff, Misty Blu Stewart, worked as a bartender at the Coyote Ugly Saloon in Nashville, Tennessee.[1] The plaintiff was an hourly employee, who received a wage of $2.13 per hour plus tips. As is the case with many entities in the restaurant and bar industry, the plaintiff's employer elected, as permitted by federal law, to take a "tip credit"; that is, to have the

---

[1] Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1).

1

plaintiff's tips satisfy most of the employer's obligation to pay the plaintiff a minimum wage. *See* 29 U.S.C. § 203(m).

All bartenders and others receiving tips at Coyote Ugly were required to contribute their tips to a "tip pool." (Docket No. 1 at 4.) The tips were then distributed by Coyote Ugly to "bartenders, bar backs, and security personnel." (*Id.*) The plaintiff alleges that the security personnel who work at Coyote Ugly, unlike the plaintiff, "are not paid the tipped credit of $2.13 per hour but are paid a wage that equals or exceeds the minimum wage." (*Id.*)

The plaintiff also alleges that, while she worked at Coyote Ugly, (1) she was not paid for all of her time worked, "including time worked at mandatory meetings and dance practices," (2) her pay check was reduced for "meal breaks that she did not take or [that] were not [] bona fide meal breaks," and (3) she worked overtime but was not paid time-and-a-half for all overtime hours, as required by law. (*Id.* at 5-6.) The plaintiff maintains that she is "aware of other similarly situated employees and/or former employees of Defendants" who were likewise forced to share tips with "non-tipped employees," were not paid for all time worked, and did not receive proper overtime compensation. (*Id.* at 6-7.)

On April 7, 2011, the plaintiff filed her Complaint, asserting claims on behalf of herself and other similarly situated current and former employees of Coyote Ugly under the Fair Labor Standards Act (FLSA). (Docket No. 1.) As defendants, the plaintiff named (1) CUS Nashville, LLC ("CUSN"), a Tennessee LLC that does business as Coyote Ugly Saloon in Nashville, Tennessee, (2) Coyote Ugly Saloon Development Corp. ("CUSDC") and Coyote Ugly Entertainment, Inc. ("CUEI"), Delaware corporations that, the plaintiff alleges, own and operate the "chain of bars operating under the trade name 'Coyote Ugly Saloon,'" including the

2

Nashville location, and (3) Liliana Lovell, a Louisiana resident who allegedly "has operational control" over CUSN, CUSDC, and CUEI as Chief Executive Officer. (*Id*. at 2.) The plaintiff asserts that she was the "employee" of each of these defendants for purposes of the FLSA. (*Id.* at 3.)

On May 24, 2011, CUSN, CUSDC, and CUEI (but not Lovell) filed the pending Motion to Dismiss. (Docket No. 12.)

## ANALYSIS

The defendants maintain that the plaintiff's challenges to the "tip pooling" arrangement at Coyote Ugly are insufficient to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) and that CUEI was not the plaintiff's "employer" for FLSA purposes. (Docket No. 12.)

### I. Tip Pooling Arrangement

#### A. Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).

### B. The Sufficiency of the "Tip Pooling" Claim

As noted above, in the Complaint, the plaintiff alleges that the defendants' practice of having tipped employees place their tips in a pool that was then doled out to all tipped employees, plus security personnel, runs afoul of the FLSA because the security personnel were not subject to a "tip credit" but, rather, received an hourly wage that exceeded the minimum wage. (Docket No. 1 at 4-5.)

The FLSA contains specific provisions concerning tipping and tip pools. First, an employer may only take a "tip credit" for the wages of "tipped employees." 29 U.S.C. § 203(m). A tipped employee is an "employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). Tip-pooling arrangements, like the one described in the Complaint, are only permitted amongst "tipped employees"--again, employees who "customarily and regularly" receive tips. 29 U.S.C. § 203(m).

In *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294 (6th Cir. 1998), the Sixth Circuit considered, on a summary judgment motion, the propriety of a tip pooling arrangement

4

that required servers to include hosts, bus persons, and bartenders in the tip pool. The court recognized that the regulations interpreting the FLSA created some "circularity," because they stated that an employee, such a bus boy, who received tips only from a tip pooling arrangement was considered an employee who "customarily and regularly received tips." *Id.* at 301-02.

To avoid a scenario in which an employer could make an employee a "tipped employee" simply by putting him in the "tip pool," the court focused on the level of customer interaction that the employee had to determine tip pool eligibility. *Id.* Therefore, hosts, who, the evidence showed, performed "important customer service functions" (greeting and seating customers or "enhancing" the waiting experience) and who had more than "de minimis" contact with customers, were eligible for inclusion in the tip pool, while an employee, such as a dishwasher, who had no customer interaction "at all" would not be eligible for inclusion in such a tip pool. *Id.* This, the court implicitly recognized, is consistent with the notion that employees generally receive tips for providing direct and helpful customer assistance. *Id.*

In addition to discussing *Kilgore*, the defendants cite a series of non-controlling cases, in which various district courts have determined that "front of the house" employees who interact with customers, such as maitre d's, silverware rollers, or sushi chefs, may be included in tip pools. (Docket No. 13 at 5-7 citing *e.g. Rudy v. Consol. Restaurant Co.*, 2010 WL 3565418, *4 (N.D. Tex. Aug. 18, 2010); *Turner v. Millennium Park Joint Venture*, 2011 WL 772878, *3 (N.D. Ill. March. 7, 2011)). In light of this case law, the defendants call for a "common sense understanding to be applied . . . which is that security guards work in the 'front of the house' . . . [and] have more than de minimis customer contact," as they "check for identification, keep patrons safe and ensure everyone is having a good time, while not being unruly or
5

that required servers to include hosts, bus persons, and bartenders in the tip pool. The court recognized that the regulations interpreting the FLSA created some "circularity," because they stated that an employee, such a bus boy, who received tips only from a tip pooling arrangement was considered an employee who "customarily and regularly received tips." *Id.* at 301-02.

To avoid a scenario in which an employer could make an employee a "tipped employee" simply by putting him in the "tip pool," the court focused on the level of customer interaction that the employee had to determine tip pool eligibility. *Id.* Therefore, hosts, who, the evidence showed, performed "important customer service functions" (greeting and seating customers or "enhancing" the waiting experience) and who had more than "de minimis" contact with customers, were eligible for inclusion in the tip pool, while an employee, such as a dishwasher, who had no customer interaction "at all" would not be eligible for inclusion in such a tip pool. *Id.* This, the court implicitly recognized, is consistent with the notion that employees generally receive tips for providing direct and helpful customer assistance. *Id.*

In addition to discussing *Kilgore*, the defendants cite a series of non-controlling cases, in which various district courts have determined that "front of the house" employees who interact with customers, such as maitre d's, silverware rollers, or sushi chefs, may be included in tip pools. (Docket No. 13 at 5-7 citing *e.g. Rudy v. Consol. Restaurant Co.*, 2010 WL 3565418, *4 (N.D. Tex. Aug. 18, 2010); *Turner v. Millennium Park Joint Venture*, 2011 WL 772878, *3 (N.D. Ill. March. 7, 2011)). In light of this case law, the defendants call for a "common sense understanding to be applied . . . which is that security guards work in the 'front of the house' . . . [and] have more than de minimis customer contact," as they "check for identification, keep patrons safe and ensure everyone is having a good time, while not being unruly or

inappropriate." (Docket No. 13 at 7.) While the defendants concede that they have found no case law holding security personnel such as "bouncers" to be "tip pool" eligible, they suggest, at this early stage, that the court "can apply a reasonable understanding of the function of security guards" and reject the plaintiff's tip pooling claim "without requiring these Defendants to go through expensive and protracted discovery." (*Id.*)

The defense argument cannot prevail. Given the early stage of the litigation, they have no evidence, only argument, that their specific security personnel are eligible for the tip pool. Clearly, this is an issue where, despite the expense and time involved, discovery is necessary to identify the role played by security guards at the Nashville Coyote Ugly. In the absence of a factual record, it is entirely unclear how and to what extent these security personnel interact with customers, which is the touchstone issue under *Kilgore*.[2] In light of this, the defendants' motion to dismiss the "tip pooling" claim will be denied.

## II.  CUEI's Status as Plaintiff's Employer

The defendants recognize that the plaintiff has alleged that the four defendants were her employer. (Docket No. 13 at 3.) However, they maintain, this is "inaccurate." (*Id.*)

Supported by the affidavit of Jeffrey Wiseman, General Counsel for CUSDC and CUEI, the defendants maintain that CUEI "has no employees and has never had any employees." (Docket No. 12 Ex. 1 at 1.) Rather, Wiseman claims, CUEI was established as an "entertainment division" of the Coyote Ugly enterprise and would "send teams of bartenders around the country

---

[2]Moreover, as the court reads *Kilgore*, employees are eligible for a tip pool if they interact with the customers in a manner that does not detract from the experience. Drawing on its "reasonable understanding," the court is not convinced that a bouncer who had largely unpleasant, confrontational, or hostile interactions with customers would be eligible for a tip pool. But this is an issue for another day, after sufficient discovery has been conducted.

6

and world to sing, dance and bartend at Coyote Ugly themed events." (*Id.*) At these events Coyote Ugly bartenders were, according to Wiseman, retained as independent contractors to sing with a band. (*Id.*) Wiseman maintains that the band recorded a "few songs and the company sold downloads," but the plaintiff "did not participate" in these, ultimately unprofitable, activities. (*Id.*)

Using Wiseman's affidavit, the defendants argue that CUEI is, essentially, an unsuccessful mobile offshoot of the Coyote Ugly enterprise, which did not own or manage any Coyote Ugly saloons and had no integration with the other entities named by the plaintiff in this case. (Docket No. 13 at 4.) Therefore, the defendants argue, CUEI should be dismissed. (*Id.*)

In response, the plaintiff points to the broad definition of "employer" contained in the FLSA, which is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Moreover, the plaintiff points out, the Supreme Court has stated that this definition of "employer" is to be construed "expansively," to include entities with "managerial responsibilities" and "substantial control of the terms and conditions of the work of the employees." (Docket No. 17 at 3 citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)).

The Sixth Circuit uses a test of "economic reality" to determine the legal question of whether an entity qualifies as a party's employer for FLSA purposes. *U.S. Dept. of Labor v. Cole Enters.*, 62 F.3d 775, 778 (6th Cir. 1995). That is, recognizing that more than one individual or entity can qualify as a plaintiff's employer, the court looks to which entities or individuals have "operational control" over the relevant aspects of the business enterprise at issue and which entities make key decisions including firing, hiring and salary determinations for the enterprise. *Id.*

7

In light of this standard, however the issue is sliced[3], the court simply lacks sufficient credible information at this stage to make a determination regarding the "employer" status of CUEI. Indeed, CUEI is attempting to be dismissed from this case based on the completely unsupported and entirely conclusory say-so of its general counsel. This is clearly an issue which requires further discovery, which, again, despite its expense, will provide the court with a clear and credible picture of the interactions and responsibilities of the various Coyote Ugly entities sued here. Therefore, the defendants' motion to dismiss CUEI will be denied.

## CONCLUSION

For the reasons discussed herein, the defendants' Motion to Dismiss (Docket No. 12) is **DENIED**.

It is so Ordered.

Entered this 29th day of June 2011.

_____
ALETA A. TRAUGER
United States District Judge

---

[3]The defendants have raised CUEI's employer status as a jurisdictional issue, claiming that the court lacks subject matter jurisdiction over CUEI because CUEI was not the plaintiff's employer for FLSA purposes. (Docket No. 13 at 2.) It is this "factual attack" on jurisdiction that, the defendants maintain, permits the use of Wiseman's affidavit at the Motion to Dismiss stage to challenge the assertions in the Complaint. (*Id.* citing *Alpine Indus. v. FTC*, 40 F. Supp.2d 938, 940 (E.D. Tenn. 1998)). In response, the plaintiff argues that the court clearly has subject matter jurisdiction over her federal claims, and CUEI is merely offering a defense to liability, which should be reviewed under the familiar Rule 12(b)(6) standard, in which only the allegations in the Complaint would be considered, not Wiseman's affidavit. (Docket No. 17 at 1-3.) Here, this dispute is academic; even considering Wiseman's affidavit, the defendants fall well short of making the evidentiary showing necessary for the court to conclude that CUEI was not the plaintiff's employer.