**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MISTY BLU STEWART, on behalf** | ) | |
| **of herself and all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:11-cv-0342** |
| | ) | **Judge Trauger** |
| **CUS NASHVILLE, LLC, COYOTE UGLY** | ) | |
| **SALOON DEVELOPMENT CORP.,** | ) | |
| **COYOTE UGLY ENTERTAINMENT, INC.,** | ) | |
| **and LILIANA LOVELL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Pending before the court is the Plaintiffs' Motion for Reconsideration to Include Non-Nashville Opt-in Plaintiffs in Uncompensated Off-the-Clock Overtime Class (Docket No. 126), to which the defendants have filed a response (Docket No. 130). For the reasons discussed herein, the plaintiffs' motion will be denied.

## BACKGROUND

On April 7, 2011, Misty Blu Stewart, a former bartender employed at the Coyote Ugly Saloon in Nashville, Tennessee, brought this federal wage and hour suit on behalf of herself and other similarly situated current and former employees, alleging Fair Labor Standards Act ("FLSA") claims arising out of Coyote Ugly's alleged operation of an illegal tip pool and its failure to compensate its employees for work performed off-the-clock and during overtime

1

hours.[1]  As defendants, the plaintiff named (1) Liliana Lovell, the founder and developer of the

Coyote Ugly Saloon concept; (2) Coyote Ugly Saloon Development Corp., an entity headed by

defendant Lovell, which holds a majority stake in several limited liability companies that own

Coyote Ugly Saloons nationwide ("company-owned saloons"); (3) CUS Nashville, LLC, which

is the limited liability company that owns the Nashville saloon; and (4) Coyote Ugly

Entertainment, Inc., a defunct entity that was previously formed to promote a singing group that

was paid as an independent contractor.  At all times relevant to this lawsuit, company-owned

saloons were located in the following cities: Denver, Colorado; Ft. Lauderdale, Florida;

Oklahoma City, Oklahoma; Nashville, Tennessee; Memphis, Tennessee; Austin, Texas; San

Antonio, Texas; and Milwaukee, Wisconsin.

On November 15, 2011, Ms. Stewart filed a motion seeking conditional certification of a

class consisting of certain current and former hourly employees working at each of Coyote

Ugly's company-owned saloons nationwide.  (Docket No. 32.)  In her declaration in support of

the motion, Ms. Stewart stated, among other things, that she was required to attend dance

practices and staff meetings during the course of her employment but that she was not

compensated for all of the hours that she spent at these endeavors.  (Docket No. 34 ¶ 7.)  She

also stated that she was not paid time-and-a-half for all of the overtime hours that she worked.

(*Id.* ¶ 9.)  In a Memorandum Opinion issued on February 13, 2012, the court conditionally

certified a collective action consisting of the following two classes:

---

[1] For a more thorough recitation of the factual background, the reader is directed to the
court's prior Memorandum Opinions in this case located at Docket Nos. 19, 55, and 147.

2

1.     All current and former employees who worked as bartenders, barbacks, or waitresses at any company-owned Coyote Ugly saloon at any time within the last three years who were required to contribute their tips to a "tip pool" in which security guards also participated; and

2.     All current and former employees who worked as bartenders at the company-owned Coyote Ugly saloon in Nashville, Tennessee at any time within the last three years who performed uncompensated off-the-clock and overtime work.

(Docket No. 55 at 14.)  The court denied Ms. Stewart's motion to the extent that it sought certification of a nationwide off-the-clock and overtime class.  (*Id.* at 13.)  However, the court noted that this denial was "without prejudice to the plaintiff's right to seek broader class certification and notice, should the evidence obtained in discovery warrant such a request."  (*Id.* at 18.)

Following the court's February 13, 2012 decision, an agreed notice form was sent to potential opt-in plaintiffs, written consents were filed with the court, and fact discovery commenced.  Written consents from opt-in plaintiffs were filed with the court between March 12, 2012 and June 1, 2012.  (*See* Docket Nos. 58-63, 65, 68-96.)  Following the close of discovery, the plaintiffs filed the pending motion on December 6, 2012.  (Docket No. 126.)  On the same date, the parties filed respective motions for summary judgment (Docket Nos. 119 and 123), which the court addressed in a Memorandum Opinion issued on February 6, 2013.  (Docket No. 147.)  In their motion for reconsideration, the plaintiffs move the court to expand the scope of the Nashville off-the-clock and overtime class to include current and former employees who worked at the remaining non-Nashville company-owned Coyote Ugly Saloons.  (Docket No. 126 at 5.)

3

## ANALYSIS

**I.      Conditional Certification Standard**

Though styled as a "motion for reconsideration," by seeking court-ordered "authorization" to expand the scope of the Nashville off-the-clock and overtime class and thus proceed as a nationwide collective action on this claim, the plaintiffs are seeking what is generally known as "conditional certification" of a collective action pursuant to 29 U.S.C. § 216(b) of the FLSA.

Recognizing that the value of an individual claim might be small and not otherwise economically sensible to pursue, the FLSA provides that a collective action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Because the statute only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Federal Rule of Civil Procedure 23. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009). Once a collective action is certified, however, employees seeking to join the class must affirmatively opt into the litigation by filing a written consent with the court. 29 U.S.C. § 216(b).

The FLSA does not define the term "similarly situated." However, the Sixth Circuit has held that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. But employees may also be similarly situated if

4

their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, "[s]howing a 'unified policy' of violations is not required [for certification]." *Id.* at 584. In *O'Brien*, the Sixth Circuit stated that even a requirement that employees' "causes of action under the FLSA accrued at about the time and place in the approximate manner of the named plaintiff" would be "more demanding than what the [FLSA] requires." *Id.* at 585 (internal quotation marks omitted).

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the employees they seek to represent. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); *O'Brien*, 575 F.3d at 583. "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (quotation marks omitted).

At the first stage, the plaintiff bears the burden of showing that employees in the class are similarly situated. *Shabazz v. Asurion Ins. Serv.*, No. 3:07-0653, 2008 WL 1730318, at *3 (M.D. Tenn. Apr. 10, 2008). At that point, "'the certification is conditional and by no means final.' The plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). In *Comer*, the Sixth Circuit approvingly quoted the lower court's decision, which stated that conditional certification "'need only be based on a modest factual showing,'" *Id.* at 547 (quoting *Pritchard*, 210 F.R.D. at 596), and that the court should use "'a fairly lenient standard [that] typically results in . . . certification.'" *Id.* (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)). If the

5

named plaintiffs show that employees in the proposed class are similarly situated, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Comer*, 454 F.3d at 546.

After discovery, the defendant may move for decertification of the conditional class. *See O'Brien*, 575 F.3d at 583. At this second stage, the court has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547. In the instant case, the defendants are no longer seeking decertification of the Nashville off-the-clock and overtime class.[2] Nonetheless, recognizing that discovery has now closed, both sides agree that the stricter second-stage standard of review should govern the resolution of the pending motion. (Docket No. 126 at 5; Docket No. 130 at 5.) The burden at this stage remains on the lead plaintiff to show that she is similarly situated to members of the putative nationwide off-the-clock and overtime class. *See O'Brien*, 575 F.3d at 584. In assessing whether the named plaintiff can survive the stricter standard of review imposed after the close of discovery, courts have required "substantial evidence" that putative class members are similarly situated. *See White v. Baptist Mem'l Health Care Corp.*, No. 08-2478, 2011 WL 1883959, at *4 (W.D. Tenn. May 17, 2011); *Heldman v. King Pharm., Inc.*, No. 3-10-1001, 2011 WL 465764, at *3 (M.D. Tenn. Feb. 2, 2011); *Frye v. Baptist Mem'l Hosp.*, No. CIV. 07-2708, 2010 WL 3862591, at *2 (W.D. Tenn. Sept. 27, 2010).

---

[2] Although the defendants previously moved to decertify the Nashville class (Docket No. 119), they later withdrew that request for relief. (*See* Docket No. 143 at 3.)

6

## II.    The Plaintiffs' Motion

In their motion, the plaintiffs argue that conditional certification of a nationwide off-the-clock and overtime class is warranted because they have provided evidence from each of the non-Nashville company-owned saloons showing that at least one Coyote Ugly employee has performed uncompensated work off-the-clock.  (Docket No. 126 at 3-5.)  In support of their motion, the plaintiffs have submitted the interrogatory responses of fourteen individuals who have already opted into the nationwide tip pool class and who worked at company-owned saloons in Denver, Ft. Lauderdale, Oklahoma City, Memphis, Austin, San Antonio, and Milwaukee.  (Docket No. 126 at 3-5; Docket No. 129, Exs. 1-14.)  In opposing the plaintiffs' motion, the defendants assert that the plaintiffs have failed to adduce substantial evidence showing that the lead plaintiff, Ms. Stewart, is similarly situated to other employees at non-Nashville saloons with respect to her off-the-clock and overtime claims.  (Docket No. 130 at 4-5.)  In support of this position, the defendants assert, among other things, that seven other opt-in plaintiffs belonging to the nationwide tip pool class state in their interrogatory responses that they are uncertain of whether they have an off-the-clock claim or otherwise expressly state that they are not asserting such a claim.  (*Id.* at 3-4.)

Again, in seeking to expand the scope of the Nashville off-the-clock and overtime class, the plaintiffs rely on the interrogatory responses of fourteen individuals who have already opted into the nationwide tip pool class and who worked at company-owned saloons outside of Nashville.  (Docket No.129; Exs. 1-14.)  Like the lead plaintiff, Ms. Stewart, each of these

7

individuals alleges that he or she performed off-the-clock work. Indeed, the discovery responses attached to the plaintiffs' motion show that at least one opt-in plaintiff performed uncompensated off-the-clock work at each of the defendants' company-owned saloons outside of Nashville. (*See id.*) Each of the fourteen individuals state that they performed off-the clock work, in varying amounts, either before the beginning of their shifts or after their respective shifts had ended. (*See id.*) Five of these individuals state that, like Ms. Stewart, they also were not compensated for attending dance practices. (*See* Docket No. 129, Exs. 1, 4-5, 12, and 14.) Finally, two individuals state in their responses that they were required to hand out flyers or coupons to potential customers twice a month and were not compensated for this work. (Docket No. 129, Exs. 5 and 11.) Unlike Ms. Stewart, however, it does not appear that any of the fourteen individuals alleging off-the-clock claims also states that they were not properly compensated time-and-a-half for any overtime hours that they worked. (*See* Docket No. 129 at Exs. 1-14.)

Having reviewed the plaintiffs' evidence, the court is not persuaded that the aforementioned fourteen interrogatory responses constitute substantial evidence that Ms. Stewart is sufficiently similarly situated to current and former employees at non-Nashville company-owned saloons with respect to her off-the-clock and overtime claims to warrant the issuance of court-supervised nationwide notice at this late stage of the proceedings. While the plaintiffs claim that they have shown that employees were subjected to a company-wide policy of performing off-the-clock work, the court notes that the individual responses of the fourteen opt-in plaintiffs only attest to each individual's specific experiences at a particular company-owned

8

saloon.  (*See* Docket No. 129 at 4-5; Docket No. 129, Exs. 1-14.)  Indeed, none of the

interrogatory responses relied upon by the plaintiffs states that an opt-in plaintiff was aware of a

common practice at a specific company-owned saloon wherein employees were required to work

off-the-clock.  (*See id.*)  Moreover, as the defendants also point out, there are non-Nashville opt-

in plaintiffs who, unlike the fourteen individuals relied upon by the plaintiffs, do not assert off-

the-clock claims.  (Docket No. 130 at 3-4.)  Specifically, seven non-Nashville opt-in plaintiffs

who joined the nationwide tip pool class either state that they are uncertain whether they possess

an off-the-clock claim or expressly state that they are not pursuing such a claim.  (*See* Docket

No. 130, Exs. 3-9.)  These individuals worked in company-owned saloons in Denver, Memphis,

and Oklahoma City.  (Docket No. 130 at 3-4.)

    In sum, having applied a stricter standard of review to the plaintiffs' evidence, the court

does not believe that the plaintiffs have carried their significantly higher burden at this late stage

of the proceedings to support conditional certification of a nationwide off-the-clock and overtime

class.  As previously mentioned, discovery has closed, and the court has issued a decision on the

parties' respective motions for summary judgment.  In addition, this case is currently set for trial

on April 16, 2013.  (Docket No. 67.)  If the court granted the plaintiffs' motion, it would

necessarily have to reset the trial date and order another notice and opt-in period, followed by

another round of fact discovery concerning the off-the-clock and overtime issues.  Based on the

evidentiary record before it, the court believes that granting the plaintiffs' motion and imposing

such a delay to the case schedule at this late stage would not constitute an efficient use of

judicial resources.

It also appears to the court that the evidence underlying the plaintiffs' motion could have been discovered at an earlier stage of the proceedings. The fourteen interrogatory responses filed in support of the plaintiffs' December 6, 2012 motion were completed between the end of October 2012 and the end of November 2012. (*See* Docket No. 129, Exs. 1-14.) However, a review of the docket reveals that written consent forms from these fourteen opt-in plaintiffs were filed with the court between March 15, 2012 and June 1, 2012, which turned out to be the last day that any individual opted into this lawsuit. (Docket Nos. 62, 65, 68-69, 71, 73, 78, 80, 82, 90, and 96.) Given these circumstances, the court fails to see why the plaintiffs, through the exercise of reasonable diligence, could not have learned about the off-the-clock claims belonging to these fourteen opt-in plaintiffs and brought that information to the court's attention at an earlier stage of this litigation. The plaintiffs, for their part, offer no explanation regarding why they needed until December of 2012 to present this information via the pending motion. The court believes that the plaintiffs' failure to demonstrate reasonable diligence in presenting the aforementioned off-the-clock evidence is another factor that counsels in favor of denying their motion.

The plaintiffs' motion will accordingly be denied. This denial is without prejudice to the non-Nashville opt-in plaintiffs' right to seek, in another forum, collective action treatment for the off-the-clock and overtime claims belonging to current and former employees who worked at company-owned Coyote Ugly Saloons outside of Nashville. However, for the reasons expressed above, the plaintiffs cannot seek conditional certification of a nationwide off-the-clock and overtime class here.

10

## CONCLUSION

For all of the reasons discussed herein, the Plaintiffs' Motion for Reconsideration to Include Non-Nashville Opt-in Plaintiffs in Uncompensated Off-the-Clock Overtime Class (Docket No. 126) is **DENIED**.

It is so ordered.

Enter this 7th day of February 2013.

_____
ALETA A. TRAUGER
United States District Judge

11